## BANKS *v.* THE STATE.

1. Provisions germane to the general subject-matter embraced in the title of an act, and which are designed to carry into effect the purposes for which it was passed, may be constitutionally enacted therein, though not referred to in the title otherwise than by the use of the words, "and for other purposes."
2. The act of 1903, entitled "An act to make it illegal for any person to procure money, or other thing of value, on a contract to perform services, with intent to defraud, and to fix the punishment therefor, and for other purposes," is not unconstitutional as containing matter in its body different from what is expressed in its title.
3. The act referred to is not unconstitutional as containing more than one subject-matter.
4. The purpose of the act of 1903, as indicated on its face, is to make criminal and punish certain fraudulent practices, not to enforce imprisonment for debt; and it is not in conflict with the provision of the constitution which declares that there shall be no imprisonment for debt.
5. The legislature has power to establish rules of evidence where not in conflict with the constitution or rights guaranteed by it.
6. A provision of the act of 1903 to the effect that proof of the contract of hiring, the procuring thereon of money or other thing of value, the failure to perform the service so contracted for, or to return the money so advanced with interest thereon to the time the labor was to be performed, without good and sufficient cause, and loss or damage to the hirer, shall be presumptive evidence of a fraudulent intent in the procurement of the advances, is not an assumption of judicial functions by the legislature.
7. A ground of demurrer to an accusation, "because there is no legal contract set out in said accusation, and no payment or advances made are set out," only raises the question as to whether such contract and such payment are set out in the accusation at all, and not whether they are stated with sufficient particularity.
8. An accusation which charged that the accused procured from the hirer "money, shoes, and clothes, of the value of $13.00, with intent not to perform such service, to the loss and damage of the hirer in the sum of $4.00," was not sufficiently sustained to authorize a conviction by evidence that the hirer advanced to the accused "in money, clothes, *etc.*, $13.50," and that the accused owed the hirer $4 on account of advancements.

Argued October 16,—Decided November 8, 1905.

Accusation of cheating and swindling. Before Judge Hammond. City court of Griffin. July 7, 1905.

Richard Banks was tried in the city court of Griffin, under an accusation which charged that, after having contracted with E. M. Flynt to perform services for hire as a common laborer on certain terms stated, he procured from the hirer money, shoes, and clothes, of the value of $13, with intent not to perform such services, and did not in fact perform the services contracted for or return the money so advanced, to the loss and damage of the hirer in the sum of $4. He filed a demurrer to the accusation, which was overruled, and on the trial he was convicted. He moved for a new trial, and, after the overruling of the motion, excepted.

*Thomas W. Thurman,* for plaintiff in error.

*Thomas E. Patterson, solicitor,* contra.

LUMPKIN, J. (After stating the facts.) 1, 2. This case arose upon an accusation in a city court, under the act of 1903 (Acts 1903, p. 90) entitled, "An act to make it illegal for any person to procure money, or other thing of value, on a contract to perform services, with intent to defraud, and to fix the punishment therefor, and for other purposes." The act is attacked as unconstitutional on the ground that it contains two subject-matters, and also contains matter different from what is expressed in its title (Civil Code, §5771). "Provisions germane to the general subject-matter embraced in the title of an act, and which are designed to carry into effect the purpose for which it was passed, may be constitutionally enacted therein, though not referred to in the title otherwise than by the use of the words, 'and for other purposes.'" It is not essential that the title to the act should recite in minute detail all of its provisions; otherwise the act itself would be but a copy of its title. The title should state in a brief and comprehensive form the purpose of the act, and the subject-matter to be dealt with. The words, "and for other purposes," in the title, are sufficient to cover provisions in the body of the act, germane to the general subject-matter. *Black* v. *Cohen,* 52 *Ga.* 621; *Hope* v. *Gainesville,* 72 *Ga.* 246; *McGruder* v. *State,* 83 *Ga.* 616; *McCommons* v. *English,* 100 *Ga.* 653; *Plumb* v. *Christie,* 103 *Ga.* 686; *Mayor of Macon* v. *Hughes,* 110 *Ga.* 795; *Hart* v. *State,* 113 *Ga.* 939; *Stapleton* v. *Perry,* 117 *Ga.* 561; *Oglesby* v. *State,* 121 *Ga.* 602.

3. The act is not unconstitutional on the ground that it contains more than one subject-matter. The subject-matter is the fraudulent procurement of money or other thing of value on a contract

to perform services.　There is nothing in the act which is not germane to this subject-matter, or which is so distinct from it as to constitute a different subject-matter.　See the authorities cited above, and also *Howell* v. *State,* 71 *Ga.* 224; *Clay* v. *Central R. Co.,* 84 *Ga.* 345; *Peed* v. *McCrary,* 94 *Ga.* 487(3) ; *Central Ry. Co.* v. *State,* 104 *Ga.* 831; *Welborne* v. *State,* 114 *Ga.* 793(6).

4. The contention that this act is unconstitutional on the ground that it is an attempt to enforce imprisonment for debt is settled by the decision in *Lamar* v. *State,* 120 *Ga.* 312.　On the face of it, the purpose of the act is to punish fraudulent practices, not the mere failure to pay a debt.　Thus considered, it is constitutional. Otherwise, it would not be so.　And we will not presume an unconstitutional purpose on the part of the legislature, where the act is readily capable of a construction harmonizing with the constitution.

5, 6. It is further insisted that the act under consideration is violative of that clause of the constitution which declares that the legislative, judicial, and executive powers shall forever remain separate and distinct (Civil Code, § 5720).　This contention is based on the second section of the act, which declares that satisfactory proof of the contract, the procuring thereon of money or other thing of value, the failure to perform the services so contracted for, or failure to return the money so advanced with interest thereon at the time said labor was to be performed, without good and sufficient cause, and loss or damage to the hirer, shall be presumptive evidence of the fraudulent intent.　This is not an assumption of judicial functions by the legislature.　It declares a rule of evidence under which certain acts are deemed presumptive evidence of a fraudulent intent in committing them.　The legislature has power to establish rules of evidence.　Familiar illustrations of the exercise of this power are to be found in a statute which declares that recitals in administrators' deeds, of compliance with legal provisions, shall be prima facie evidence of the facts recited (Civil Code, § 3454) ; and in one which removes the common-law disqualification of a witness by reason of interest, and allows parties to actions to testify (Civil Code, § 5269) ; and in one which makes the protest of a promissory note evidence of the facts therein stated (§ 5235). The Civil Code, § 2321, declares that upon proof of damage done by the running of the locomotives or cars or other machinery of a

railroad company, or by any person in the employment and service of such company, a presumption of negligence arises against the company. This rule, however, though now embodied in the code, is not entirely of statutory origin. *Southern Railway Co.* v. *Cunningham,* 123 *Ga.* 90. Judge Cooley, speaking of the legislative power in this respect, says: "As to what shall be evidence, and which party shall assume the burden of proof in civil cases, its authority is practically unrestricted, so long as its regulations are impartial and uniform; but it has no power to establish rules which, under pretence of regulating the presentation of evidence, go so far as altogether to preclude a party from exhibiting his rights." Cooley's Con. Lim. (5 ed.) 452, 453. See also *Small* v. *Slocumb,* 112 *Ga.* 279. The power of the legislature on this subject is not so extensive in regard to criminal cases as in regard to those of a civil character. Thus, to illustrate, in the former the accused must be confronted with the witnesses. But the power to make rules of evidence, where not conflicting with any constitutional provision or right, exists in respect to both classes of cases. An act quite similar to that under consideration will be found in the Penal Code, §206, which provides that every insolvency of a chartered bank, or refusal or failure to redeem its bills on demand, shall be deemed prima facie fraudulent; but the president or any director who may be prosecuted may repel the presumption of fraud. It will be noted that the act of 1903 does not declare that the proof of the acts referred to shall be conclusive evidence of intention, or prevent the defendant from rebutting its presumptive effect. Had it done so, a much more serious question would have been raised.

7. Another ground of the demurrer is, "because there is no legal contract set out in said accusation and no payments or advances made are set out." This may have been intended to raise some question as to whether there was a want of sufficient fullness or specification in regard to the matters mentioned, but it does not in fact do so. It denies that there was any such contract or making of advances alleged. A reference to the accusation shows that in fact it alleged the making of a contract to perform services for hire, and that the accused obtained from the hirer money, shoes, and clothes of the value of $13. Nor is there any greater merit in the suggestion that the act of 1903 is in violation of that provision of the constitution which declares that protection to person and prop-

erty is the paramount duty of government, and shall be impartial and complete. The demurrer, therefore, was properly overruled.

8. We find it necessary to reverse the judgment refusing a new trial, on the ground that it is not supported by the evidence. The accusation alleged that the defendant procured "from the hirer money, shoes, and clothes of the value of $13.00, with intent not to perform such services, to the loss and damage of the hirer in the sum of $4.00." The evidence of the prosecutor, who was the only witness introduced, was that "during the time I advanced him in money, clothes, etc. $13.50. He owes me now $4 on account of advancements." It will thus be seen that nowhere does it appear how much of the $13.50 was in money and how much in clothes, and how much fell within the designation of "etc." As neither the accusation nor the evidence indicated a loss or damage to the hirer exceeding four dollars, it is quite possible that the entire loss was included in the advances covered by the indefinite description "etc.," which did not accord with the accusation and was too vague to authorize a conviction. There is nothing else either in the demurrer or in the motion for new trial which requires a reversal.

*Judgment reversed. All the Justices concur.*